IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re THOMAS W. OLICK, <br>     Debtor. | : <br> : <br> : |
| THOMAS W. OLICK, <br>     Plaintiff-Appellant, <br>     v. <br> WILLIAM C. HOUSE *et al.*, <br>     Defendants-Appellees. | : <br> : <br> :      CIVIL ACTION NO. 11cv4982 <br> : <br> : <br> : |

**MEMORANDUM**

YOHN, J.                                                                                                                                 December 17, 2012

       This bankruptcy appeal arises from an adversary proceeding brought by Thomas W. Olick against his former bankruptcy attorney William C. House. Olick appeals from the bankruptcy court's June 28, 2011, order granting House's motion to dismiss Olick's complaint with prejudice. I conclude that the bankruptcy court's order of June 28, 2011, should be affirmed in part and reversed in part.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

       As litigation between Olick and House extends over a decade, the factual and procedural history is extensive. The present adversarial action arises from House's representation of Olick in both Olick's 1996 chapter 13 bankruptcy proceedings and in two related National Association of Securities Dealers (NASD) arbitrations. Olick has filed three prior adversarial proceedings against House based on these representations and has previously challenged the fee awarded to

House in the bankruptcy and NASD proceedings. Below is a summary of the relevant factual and procedural history.

Olick and his wife filed bankruptcy proceedings under chapter 13 on July 11, 1996. (Bankr. No. 96-22123, Doc. No. 1.) House became general bankruptcy counsel for Olick and his wife in the bankruptcy proceedings pursuant to a private written agreement on August 27, 1997. House continued to represent the Olicks in their bankruptcy proceedings until December 7, 1998, when House received a letter from Olick stating, "My wife and I are discharging you as our bankruptcy counsel. We find it impossible to work with you." (Appellee Br. App. I, Tab A.) House filed a motion to withdraw as bankruptcy counsel for the Olicks on January 20, 1999, and the court granted the motion on March 11, 1999. (Bankr. No. 96-22123, Doc. Nos. 293, 324.)

In addition to representing the Olicks in their bankruptcy proceedings, on April 29, 1997, House was appointed by an order of the bankruptcy court to serve as special counsel to the chapter 13 trustee, in a pair of related NASD arbitrations involving Olick.[1] (Appellee Br. App. I, Tab R.) Earlier that month Olick and House entered into a private retainer agreement regarding the NASD arbitrations. (Appellant Br. Ex. 6.) On May 20, 1998, House filed a motion with the bankruptcy court to withdraw as special counsel to the trustee in the NASD arbitrations. (Appellant Br. Ex. 12.) Although, the court never ruled on this motion, after May 20, 1998, House discontinued his representation of Olick in the NASD proceedings. *(See* Compl.¶¶ 29-32; *see also* Appellant Br. Ex. 13.) As special counsel in the NASD arbitrations, House was

---

[1] House was appointed to represent Olick in *Olick v. Dippel, et al.*, Case No. 94-05051 and *Olick v. John Hancock Distributors, Inc. et al.,* Case No. 96-01247. At some later unspecified date, the NASD arbitrations were consolidated as Case No. 94-05051 for a hearing before a panel of NASD arbitrators.(Appellee Br. App. I, Tab S.)

appointed by the bankruptcy court to represent Olick, who was suing various parties, including John Hancock Distributors, Inc. and John Hancock Mutual Life Ins.[2] (*Id.*; *see also* Compl. ¶ 5.) John Hancock Distributors, Inc., John Hancock Mutual Life Ins., and Larry Carter ("the Hancock parties") were dismissed from the NASD proceedings by an order of the district court on January 21, 1999.[3] (Appellee Br. App. I, Tab S 4.) (Docket No. 11-96-04460, Doc. Nos. 293, 324.) The NASD proceedings against the remaining parties concluded on July 20, 2001. (Appellee Br. App. I, Tab S.)

After filing his motion with the bankruptcy court to withdraw as bankruptcy counsel on January 20, 1999, House filed a fee application with the court on January 21, 1999. (Bankr. No. 96-22123, Doc. Nos. 293, 294.) In his fee application House requested payment for his representation during both the bankruptcy proceedings and the NASD arbitrations. *See In re Olick,* Case No. 96-22123T (Bankr. E.D. Pa. June 28, 2011).[4] Olick objected to the fee application. For over three years, Olick and House contested the fee award and on January 16, 2003, the bankruptcy court entered its final order awarding House fees for his representation of Olick from April 29, 1997, through December 7, 1998. (Bankr. No. 96-22123, Doc. No. 523).

---

[2] In NASD arbitration, *Olick v. Dippel, et al.*, Case No. 94-05051, Olick made claims against Thomas Nikles, Edison Dippel, Jean Dippel, Wayne Dippel, Patsy LaRosa, and Wayne Griffiths. In NASD arbitration, *Olick v. John Hancock Distributors, Inc. et al.,* Case No. 96-01247, Olick made claims against John Hancock Distributors, Inc., John Hancock Mutual Life Ins. Co., Joseph DiMento, DiMento General Agency, Quantum Financial Group, Inc., Anne Buckley, Kimberly Spence, and Larry Carter. (Appellee Br. App. I, Tab S.)

[3] Additionally, Olick withdrew his claim against Anne Buckley; Patsy LaRosa and Kimberly Spence were dismissed on consent of the parties. (Appellee Br. App. I, Tab S 4.)

[4] The case is unpublished and thus was provided to the court as an exhibit to the appellee's brief. *(See* Appellee Br. App. I, Tab J.)

Olick appealed the final order, but both the district court and the Third Circuit affirmed the bankruptcy court's award. *See In re Olick*, 311 F. App'x 529, 530 (3d Cir. 2008); *In re Olick*, CIV.A. 03-6723, 2005 WL 331534 (E.D. Pa. Feb. 10, 2005), *aff'd,* 311 F. App'x 529 (3d Cir. 2008).

On March 22, 1999, two months after House filed his fee application, Olick initiated his first adversarial proceeding against House (*House I*). (Appellee Br. App. I, Tab B.) Olick alleged malpractice and breach of contract based on House's representation of Olick in the bankruptcy and related NASD proceedings. Olick's initial complaint was dismissed, and he filed an amended complaint on August 16, 1999. (Appellee Br. App. I, Tabs C, D.) On March 30, 2000, the bankruptcy court dismissed Olick's amended complaint in *House I* with prejudice. (Appellee Br. App. I, Tab E.) No appeal followed.

On March 28, 2002, Olick filed a second adversarial complaint against House alleging House breached their agreement by failing to produce documents related to House's fee application (*House II*). (Appellee Br. App. I, Tab F.) On January 12, 2009, the bankruptcy court dismissed the complaint for lack of subject-matter jurisdiction and because the claim was now moot due to the final resolution of the fee dispute. (Appellee Br. App. I, Tab G.) No appeal followed.

On March 3, 2003, Olick filed a third adversarial action against House (*House III*). (Appellee Br. App. I, Tab H.) The complaint in *House III* is almost identical to the complaint in the current case. In his *House III* complaint, Olick also alleged malpractice, breach of contract, breach of fiduciary duty, and fraudulent filing of fees based on House's representation of Olick in the bankruptcy and NASD proceedings. (Appellee Br. App. I, Tab H.) House moved to dismiss

4

the complaint on April 4, 2003. (Docket for Adv. No. 03-2054. Bankr. 96-22123, Doc. No. 10.) The bankruptcy court did not rule on the motion until January 28, 2010, when the court dismissed the complaint for lack of jurisdiction. The bankruptcy court explained that because the administration of the bankruptcy case was complete, the court lacked subject-matter jurisdiction to determine the current adversarial claims. (Appellee Br. App. I, Tab I.) No appeal followed.

On February 4, 2010, less than a week after *House III* was dismissed, Olick filed the current adversarial action (*House IV*). (Docket for Adv. No. 10-0038. Bankr. 96-22123, Doc. No. 1). On April 1, 2010, House filed a motion to dismiss the complaint with prejudice. (Docket for Adv. No. 10-0038. Bankr. 96-22123, Doc. No. 18.) Unlike the bankruptcy court in *House III*, on June 28, 2011, the bankruptcy court in *House IV* determined that it had subject matter jurisdiction under 28 U.S.C. § 1334(b) because the proceeds of the litigation could provide funding for Olick's confirmed chapter 13 bankruptcy plan. *Olick v. House (In re Olick) (House IV)*, Case No. 07-10880 ELF, Adv. No. 10-0038, 2011 WL 2565665 at *2 (Bankr. E.D. Pa. June 28, 2011). The court found that Olick's claims were barred by res judicata based on the final ruling in the fee dispute and in *House I*. *See id.* at 6. Consequently, the bankruptcy court granted House's motion and dismissed Olick's complaint with prejudice. *See id.* at 9. This appeal followed.

## II. STANDARD OF REVIEW

District courts have jurisdiction to hear appeals from final judgments and orders of the bankruptcy courts. Under the Federal Rules of Bankruptcy Procedure, a district court, sitting as an appellate tribunal, "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or

5

decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. In so doing, the district court applies a clearly erroneous standard to review a bankruptcy court's factual findings and a *de novo* standard to review its conclusions of law. *See In re Siciliano*, 13 F.3d 748, 750 (3d Cir. 1994).

The Federal Rules of Bankruptcy Procedure import into adversary proceedings the standard for a motion to dismiss set forth in Federal Rule of Civil Procedure 12(b)(6). *See* Fed. R. Bankr. P. 7012. "To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual allegations "that are 'merely consistent with' a defendant's liability," or that permit the court to infer no more than "the mere possibility of misconduct" are not enough. *Id.* at 1949-50 (quoting *Twombly*, 550 U.S. at 557). Rather, the plaintiff must plead "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. In evaluating a motion to dismiss, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009); *see also Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must also draw all reasonable inferences in favor of the plaintiff. *Miller v. Fortis Benefits Ins. Co.*, 475 F.3d 516, 519 (3d Cir. 2007).

Along with the allegations contained in the complaint, the court may consider exhibits attached to the complaint and matters of public record. *Pension Benefit Guaranty Corp. v. White Consol. Indus. Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993). The allegations may be supplemented by

6

any relevant matter that can be judicially noticed. *Wishnefsky v. Addy,* 969 F. Supp. 953, 954 (E.D. Pa. 1997) (citing *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 416 n. 3 (3d Cir.1988)); 5A Wright & Miller, Federal Practice and Procedure § 1363 (2d ed.1990).

**III.    DISCUSSION**[5]

In his complaint, Olick asserts four claims against House: breach of contract (count I); fraud (count II); negligence and malpractice (count III); and breach of fiduciary duty (count IV), all based on House's representation of Olick in the bankruptcy and NASD proceedings. The bankruptcy court granted House's motion to dismiss with prejudice, finding that Olick's claims were barred by res judicata. Olick now challenges the bankruptcy court's ruling. For the reasons that follow, I conclude that the bankruptcy court erred only in dismissing Olick's claims in counts I and III against House for failing to properly represent Olick against the NASD defendants, other than the Hancock parties.

**1.    Res Judicata**

The bankruptcy court found that Olick's claims were barred by res judicata. *House IV*, 2011 WL 2565665, at *6, *8 (Bankr. E.D. Pa. June 28, 2011). It determined that the final judgment in *House I* and the final order awarding House counsel fees precluded this current action. For the reasons set forth below, I conclude that the final judgment in *House I* and the final fee award do not preclude all of Olick's claims in this action.

In the current complaint and in *House I*, Olick alleged various claims based on House's representation of Olick in the bankruptcy proceeding and the adjoining NASD arbitrations. I

---

[5] Both parties have assumed, without citing any authority or providing any analysis, that Pennsylvania law applies. Because the bankruptcy court applied Pennsylvania law in this case and because both parties have cited Pennsylvania law, I will also apply Pennsylvania law.

agree with the bankruptcy court that Olick's claims in counts I, III, and IV, based on House's representation during the bankruptcy proceedings, are barred by the final determination in *House I*.

To establish that res judicata applies, a party must demonstrate the following: (1) the same parties or their privies are involved in both suits; (2) both suits involve the same cause of action; and (3) there was a final judgment on the merits in the previous suit. *Saudi v. Acomarit Mar. Servs.*, 114 F. App'x 449, 454 (3d Cir. 2004) (non-precedential) (citing *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991)). As it pertains to count I, III, and IV, the first requirement for res judicata is met because in both *House I* and the current action the only parties involved are Olick and House. The second requirement is met because Olick's claims in the amended complaint in *House I* and his claims contained in counts I, III, and IV of the present complaint are based on the same factual allegations regarding House's alleged misconduct in the bankruptcy proceedings.[6] *Compare* Amended Compl. at ¶¶ 3-4, 197-221, *Olick v. House(In re Olick) (House I)*, Case No. 96-22123 ELF, *with* Compl., *House IV,* at ¶¶ 3-5, 181-201, 224-66. Finally, the third requirement is met because the bankruptcy court dismissed Olick's amended complaint with prejudice. *Olick v. House (In re Olick) (House I)*, Case No. 96-22123 ELF, Adv. No. 99-2058, slip op. at 2 (Bankr. E.D. Pa. Mar. 30, 2000). Finally, Olick does not contest the dismissal of these claims. Consequently, all of Olick's claims contained in counts I, III, and IV regarding House's representation during the bankruptcy proceedings, are barred by res judicata.

---

[6] In Olick's present complaint, count II for fraud is based on House's actions during the fee dispute. *House I* was filed on March 22, 1999. House filed for his fee award on January 21, 1999; however, the fee was not finalized until January 16, 2003. Consequently, most of the factual allegations contained in Olick's count for fraud in his current complaint occurred after *House I* was filed. Consequently, *House I* does not bar count II in the current action. Nevertheless, as will be discussed later, count II is barred for other reasons and will be dismissed.

8

However, *House I* does not preclude Olick's claims based on House's representation during the NASD arbitrations as there was no final determination in that matter at that time. When *House I* was commenced the NASD proceedings were still pending; the bankruptcy court dismissed the claims relating to House's representation of Olick in the NASD arbitrations as being unripe. *See Olick v. House (House I) (In re Olick)*, Case No. 96-22123 ELF, Adv. No. 99-2058, slip op. at 2 (Bankr. E.D. Pa. Aug. 5, 1999) (dismissing Olick's NASD allegations without prejudice because "the [NASD] arbitration is still pending, the debtor has not suffered any damages as a result of Defendant's actions."); *see also* Brief of Defendant at 20, *House I*, Case No. 96-22123 ELF, Adv. No. 99-2058 (Bankr. E.D. Pa. Aug. 5, 1999). In *House I*, Olick filed an amended complaint, but did not assert any claims relating to the NASD proceedings. He stated, "Pursuant to this Court's Order of 8/5/99, the Plaintiff will reserve his claims regarding the Defendant's negligence and breach of contract in the NASD Proceedings...until such time as a relevant final order is issued in that matter." Amended Complaint ¶ 48, *House I*, Case No. 96-22123 ELF, Adv. No. 99-2058 (Bankr. E.D. Pa. Mar. 30, 2000). Thus, the bankruptcy court's March 30, 2000, order dismissing the amended complaint with prejudice did not apply to Olick's claims regarding the NASD arbitrations because there had been no final judgment on the merits on those claims. Consequently, *House I* does not preclude Olick's claims based on House's representation during the NASD arbitrations.

In the June 28, 2011, order in this action the bankruptcy court also found that the final fee award for House precluded this proceeding. The bankruptcy court is correct that "the entry of a final order allowing compensation to an attorney under 11 U.S.C. §330 bars further litigation regarding the propriety of the legal fees under the doctrine of res judicata." *House IV*, Case No.

9

07-10880 ELF, Adv. No. 10-0038, 2011 WL 2565665, at *6; *see also In re Earned Capital Corp.*, 331 B.R. 208, 226-227 (Bankr. W.D. Pa. 2005) (collecting cases), *aff'd*, 346 B.R. 123, 125 (W.D. Pa. 2006), *aff'd sub nom.*, *In re Seven Fields Dev. Corp.*, 505 F.3d 237 (3d Cir. 2007). In count II alleging fraud, Olick does not assert any claims based on House's representation during the bankruptcy or NASD proceedings. Olick simply claims that House fraudulently requested payment for various fees and expenses in his fee application, and was unwilling to provide documentation for those fees. As detailed previously by the bankruptcy court, the final fee award generally bars further litigation regarding fees. *See House IV*, 2011 WL 2565665, at *6. Olick already attacked House's fees during the fee dispute; he cannot reassert the same claims by recasting them as fraud. Thus, count II alleging fraud is barred by res judicata and the bankruptcy court's order dismissing it with prejudice will be affirmed.

Unlike count II, however, counts I, III, and IV all contain allegations relating to House's failure to represent Olick properly during the NASD proceedings. Based on the limited record before this court, it is unclear what claims Olick made against House in the fee dispute in the bankruptcy court. However, like in *House I*, at the time of the fee dispute, Olick's NASD arbitrations were still pending.[7] Consequently, the NASD claims contained in counts I, III, and IV, are not barred by the fee award because Olick would have been unable to assert these claims in the fee dispute proceedings.

Consequently, count II in its entirety and Olick's allegations in count I, III, and IV relating just to House's representation during the bankruptcy proceeding, are barred by res judicata. However, Olick's claims in counts I, III, and IV relating to House's representation

---

[7] House filed his fee application on January 21, 1999, and the NASD arbitrations were not concluded until July 20, 2001. (Appellee Br. App. I, Tab S.)

during the NASD arbitrations are not barred. Thus, the court must still determine if the bankruptcy court's order dismissing these claims should be affirmed on other grounds.

2.      **Statute of Limitations**

In his brief, House also alleges that each of Olick's claims is barred by the applicable statute of limitations. In his forty-page complaint Olick makes numerous allegations regarding House's conduct in the NASD proceedings. (*See generally* Compl.*)* Most of Olick's claims address House's failure to properly prosecute John Hancock Distributors, Inc. ("Hancock"), a defendant in the NASD arbitrations. Additionally, Olick makes a few vague allegations that House failed to properly represent Olick against the other NASD defendants, and he claims that House failed to attend the NASD hearings after May 20, 1998. For the reasons that will be discussed below, all of Olick's claims against House for failing to represent Olick against Hancock in the NASD arbitrations are barred by the statute of limitations; Olick's other claims, however, are not barred.

A.      **Hancock Claims**

The limitations period with respect to a particular action begins to run at the time the cause of action accrues. 42 Pa. Cons. Stat. § 5502(a). Under Pennsylvania law "[t]he trigger for the accrual of a legal malpractice action is not the realization of actual loss, but the occurrence of a breach of duty." *Knopick v. Connelly*, 639 F.3d 600, 607 (3d Cir. 2011) (citing *Wachovia Bank, N.A. v. Ferretti*, 935 A.2d 565, 572 (Pa. Super. Ct. 2007)). In his complaint, Olick asserts numerous factual allegations to establish that House failed to properly represent Olick against Hancock (hereinafter the "Hancock claims"). For example, Olick asserts that House failed to

11

bring claims against Hancock, failed to answer document requests made by Hancock, failed to follow the NASD panel's orders regarding discovery for Hancock, and failed to review documents given by Hancock. (*See* Compl. ¶¶ 12, 16, 18, 22.) It would be burdensome and time consuming to go through each Hancock claim contained in the forty-page complaint. The Hancock parties were dismissed from the NASD arbitrations by an order of the district court on January 21, 1999. Thus, because Hancock was no longer a party in the NASD arbitrations after January 21, 1999, House could not have breached his duty regarding his representation of Olick against Hancock after that date.[8] Accordingly, assuming Olick's allegations are true, Olick's Hancock claims accrued at the latest on January 21, 1999, when the district court dismissed Hancock and the other Hancock parties as defendants in Olick's NASD arbitration against them.[9] (Appellee Br. App. I, Tab S 4.) (Docket No. 11-96-04460, Doc. Nos. 293, 324.)

Because Olick's Hancock claims are so numerous, and because the last possible date a claim against House could accrue was January 21, 1999, I will use January 21, 1999, as the date the statute of limitations began to run for Olick's Hancock claims.[10]

---

[8] Although Olick appealed the district court's dismissal, because Pennsylvania uses the occurrence rule to determine when the statute of limitations begins to run, an appeal does not toll the statute of limitations in a legal malpractice action. *See Wachovia Bank, N.A.*, 935 A.2d at 574.

[9] In the July 20, 2001, NASD award, the panel stated that Hancock Distributors, Hancock Life, and Larry Carter were dismissed by an order from the district court on January 21, 1999. There is no copy of that order in the record before this court; however, upon review of the docket, the district court granted summary judgment based on res judicata in favor of Hancock Distributors, Hancock Life, and Larry Carter on December 14, 1998, against Olick. (Case. No. 96-04460, Doc. No. 45.) In this memorandum I am using the later date of January 21, 1999, because it is the date most beneficial to the appellant. As will be shown, even using the later date, all of Olick's Hancock claims are barred by the statute of limitations.

[10] However, "where a plaintiff could not reasonably have discovered his injury or its cause, [] Pennsylvania courts have applied the discovery rule to toll the statute of limitations." *Knopick,*

12

As a preliminary matter, although this action was not filed until February 4, 2010, the appropriate date to determine the timeliness of this action is the filing of *House III* on March 3, 2003, because of Pennsylvania's "savings clause." *See* 42 Pa. Cons. Stat. § 5535. The savings clause holds that if a proceeding is timely commenced and is terminated, a party has one year from the termination to re-file the claim, notwithstanding the applicable statute of limitations, unless a final judgment has been entered on the merits. The complaint in the current action alleges the same claims as *House III* and was filed only one week after *House III* was dismissed. However, as detailed below, each of Olick's claims regarding House's representation against Hancock expired before the *House III* complaint was filed on March 3, 2003; thus all claims are time barred. (Docket for Adv. No. 03-2054. Bankr. 96-22123, Doc. No. 1.)

In count I, Olick alleges breach of contract. Pennsylvania law provides for a four-year limitation period for breach of contract actions.[11] 42 Pa. Cons. Stat. § 5525(a)(8). Thus, Olick's Hancock claims, contained in his breach of contract action, expired on January 21, 2003. Consequently, Hancock claims are time barred.

---

639 F.3d at 607 (citing *Wachovia Bank, N.A.*, 935 A.2d at 572-74). Nevertheless, in Olick's complaint and is his briefs, he gives no indication that he was unaware of House's alleged breaches of duties. Letters between Olick and House, which Olick attached to his brief, establish that Olick was aware of House's alleged bad acts at the time they occurred. For example, in a letter sent from Olick to House on March 4, 1998, Olick states, "If you continue to refuse to comply with the Court and Arbitration Panel's Orders, you are irrevocably prejudicing matters against me." And "[y]ou have refused to communicate with me for a number of months. You [sic] recent statements about refusing to work on the case has caused me and my family great anxiety." (Appellant Br. Ex. 16.)

[11] Olick asserts that a breach of contract action is subject to a six-year statute of limitations. (Appellant Br. 13.) It appears that Olick is referring to 42 Pa. Cons. Stat. § 5527(b). Section 5527(b) is a catchall that only applies if the action is not "subject to another limitation specified in this subchapter." However, for this claim, § 5527(b) does not apply because § 5525(a)(8) specifically applies to breach-of-written-contract actions.

13

In count III, Olick alleges malpractice under a negligence theory. In Pennsylvania, negligence actions are subject to a two-year statute of limitations. *See* 42 Pa. Cons. Stat. § 5524. Accordingly, Olick's Hancock claims contained in count III expired on January 21, 2001. In count IV, Olick asserts that House breached his fiduciary duty. Under Pennsylvania law a claim for breach of fiduciary duty is subject to a two-year statute of limitations. *See* 42 Pa. Cons. Stat. § 5524; *see also Wise v. Mortgage Lenders Network USA, Inc.*, 420 F. Supp. 2d 389, 395 (E.D. Pa. 2006). Therefore, Olick's claims for breach of fiduciary duty against House with regard to his Hancock claims expired on January 21, 2001, and are now time barred. The bankruptcy court's order dismissing Olick's claims against House relating to the NASD proceeding is affirmed.

**B.     House's Failure to Represent Olick and Attend the NASD Arbitration Hearings**

Because all of Olick's Hancock claims are time barred, the only claims that remain are related to House's failure to represent Olick against the other NASD defendants and attend the arbitration hearings after May 20, 1998. House claims in his brief that he no longer had a duty to represent Olick in any NASD proceeding after May 20, 1998, when he filed a motion to withdraw as special counsel to the trustee. Brief for Appellee at 29, *House IV*, 2011 WL 2565665. However, House did not effectively terminate his representation on May 20, 1998, because according to the local rules for the Bankruptcy Court for the Eastern District of Pennsylvania, an attorney may only withdraw his appearance with leave of court. *See* E.D. Pa. L.B.R 2091-1. Although House filed a motion to withdraw, the bankruptcy court never ruled on that motion. Thus, House's duty to represent Olick in the NASD proceedings continued after May 20, 1998.

Based on the undisputed record before me, I conclude that House never successfully withdrew as counsel to Olick in the NASD arbitrations, and therefore he remained as Olick's special counsel until the NASD arbitrations concluded on July 20, 2001.[12] (Appellee Br. App. I, Tab S.) House was appointed as special counsel for the NASD arbitrations by the bankruptcy court on April 29, 1997, and did not become Olick's bankruptcy counsel until August 27, 1997, pursuant to a written contract between the two parties. (Appellee Br. App. I, Tab R.) (Appellant Br. Ex. 7.) Because House was engaged by two separate agreements, for two separate proceedings, House's termination for one proceeding would not end his representation of Olick in the other proceeding. In Olick's December 7, 1998, letter to House he states, "[M]y wife and I are discharging you as our bankruptcy counsel." (Appellee Br. App. I, Tab A.) He does not mention the arbitration proceedings. Additionally, in House's January 21, 1999, motion to withdraw from the bankruptcy proceedings, which was granted by the court on March 11, 1999, he only requested to withdraw as the debtor's counsel. Although House mentions his May 20, 1998, motion to withdraw as special counsel to the trustee in the NASD proceedings in his January 21, 1999, motion to withdraw from the bankruptcy proceedings, he does not request that this earlier motion be granted along with the current motion. Mot. to Withdraw as Debtors Counsel, *In re Olick*, Case No. 96-22123T (Bankr. E.D. Pa. Jan 21, 1999). Thus, Olick's termination letter and the bankruptcy court's approval of House's motion to withdraw only

---

[12]Olick argues that House remained as his counsel for the NASD proceedings until the judgment was affirmed by the Third Circuit on March 11, 2004. See (Appellant Br. 6.) However, the bankruptcy court and this court had previously determined the House's representation ended when the NASD arbitration concluded through the issuance of an award. *See In re Olick*, CIV.A. 01-7145, 2002 WL 1739667, at *2 (E.D. Pa. July 16, 2002)
("[I]t is clear that the bankruptcy court considered the appointment only to relate to House's representation of Olick in the NASD arbitration proceedings themselves and not to extend to any continuing litigation of the arbitration awards.")

relieved House of his duty to act as bankruptcy counsel, not his duty to act as special counsel to the trustee in the NASD proceedings.

It is unclear from the record before me, exactly when the allegedly bad acts regarding House's representation of Olick against the other NASD defendants occurred. However, because the arbitration awards with reference to them were not finalized until July 20, 2001, House may have been breaching his duty to Olick regarding the NASD arbitrations against the other NASD defendants until that date. (Appellee Br. App. I, Tab S.) Consequently, the statute of limitations with respect to Olick's remaining NASD claims may not have begun to run until July 20, 2001. Using a four year period applicable to count I, and using a two year period applicable to counts III and IV, Olick's claims may not have expired until July 20, 2005, and July 20, 2003, respectively. House III was filed March 3, 2003. Consequently, at this time I cannot determine whether Olick's claims in counts I, III, and IV, against House for failing to properly represent Olick against the other NASD defendants and attend the arbitration hearings after May 20, 1998, are time barred and the bankruptcy court's order dismissing them will not be affirmed on this basis. Upon further discovery, the bankruptcy court may determine whether or not Olick's allegations of House's bad acts regarding the other NASD defendants are barred by the statute of limitations.

3.  **Failure to State a Claim**

Finally, House requests that the court dismiss Olick's complaint because it fails to state a claim. Olick's allegations based on the bankruptcy proceedings and the entirety of count II have been dismissed based on res judicata, and his Hancock claims have been dismissed because they are time barred. In the remaining counts I, III, and IV, the only outstanding allegations are related

to House's failure to represent Olick against the other NASD defendants and attend the arbitration hearings after May 20, 1998. As a preliminary matter, although Olick fashions count I as a breach of contract action and count III as a negligence and malpractice action, in both claims he is actually asserting that House's actions, as Olick's attorney, harmed Olick. Consequently, count I is a claim for malpractice based in contract, and count III is for malpractice based on negligence. Olick is allowed to assert two malpractice claims based on separate theories because plaintiffs are allowed to bring malpractice actions based on contract or negligence: "There are cases in which a plaintiff could assert two distinct causes of action against an attorney, one in contract and one in tort." *Baer v. Glanzburg, Tobia & Associates, Inc.*, CIV.A. 01-CV-0684, 2001 WL 34371703, at *2 (E.D. Pa. Oct. 29, 2001) (quoting *Hoyer v. Frazee*, 470 A.2d 990, 992 (Pa. Super. Ct.1984) abrogated on other grounds by *Gorski v. Smith*, 812 A.2d 683 (Pa. Super. Ct. 2002)).

House generally alleges that each of Olick's causes of action fails to state a claim because they fail to assert that Olick suffered an injury. Because three causes of action remain, I will review each count to determine if Olick successfully states a claim in count I, III, or IV.

"Generally speaking, for a plaintiff to successfully maintain a cause of action for breach of contract requires that the plaintiff establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Meyers v. Sudfeld*, CIV.A.05-2970, 2006 WL 401855, at *10 (E.D. Pa. Feb. 21, 2006) (citing *Gorski*, 812 A.2d at 694). "Where the contract is one between a lawyer and client for the provision of legal services, 'there automatically arises a contractual duty on the part of the attorney to render those legal services in a manner that comports with the profession at large.

Hence, a breach of contract claim may properly be premised on an attorney's failure to fulfill his or her contractual duty to provide the agreed upon legal services in a manner consistent with the profession at large.'" *Meyers v. Sudfeld,* 05-CV-2970, 2007 WL 419182, at * 10 (E.D. Pa. Feb. 2, 2007) (citing *Gorski*, 812 A.2d at 694).

To prove his breach of contact action, Olick points to the NASD retainer agreement and claims that House breached the agreement by failing to appear at the arbitration hearings. (*See* Compl. ¶¶ 190, 192.) While he alleges generally that House's conduct caused him damages of $180,000 (*see id.* ¶198), earlier in the complaint he specifies that "the panel imposed an $18,000 fee upon Olick for House's aforementioned negligence and misconduct in the NASD [p]roceedings." (*See id.* ¶33.) Although, I cannot find an $18,000 fee in the record before this court, the arbitration panel did impose upon Olick a $28,800 fee. (Appellee Br. App. I, Tab S. 8.) House argues that he cannot be responsible for the fees because they were incurred after he withdrew as special counsel on May 20, 1998, and consequently he did not appear at these proceedings. Additionally, House cites the NASD decision that explains "this consolidated proceeding, which required 72 sessions to adjudicate, was as lengthy as it was due to the conduct of the parties." (*Id.*) However, in his argument House is assuming that his duty to represent Olick ended when he filed his motion to withdraw as NASD special counsel on May 20, 1998. As explained above, the bankruptcy court never granted his motion, and consequently House had a duty to attend the NASD arbitrations that took place after May 20, 1998. Thus, the "court can draw the reasonable inference," *see Iqbal*, 129 S. Ct. at 1949, that if House had attended the NASD hearings as was required in the retainer, then the litigation may have resolved more quickly, and the panel may have imposed a lower fee. Accordingly, Olick has successfully

18

alleged an injury based on House's breach of their NASD retainer and his breach of contract claim survives House's motion to dismiss for failure to state a claim.

In count III, Olick alleges malpractice based on negligence. To state a legal malpractice claim under a negligence theory, the plaintiff must show "(1) employment of the attorney or other basis for a duty; (2) failure of the attorney to exercise ordinary skill and knowledge; and (3) that such failure was the proximate cause of the harm to the plaintiff." *ASTech Int'l, LLC v. Husick*, 676 F. Supp. 2d 389, 400 (E.D. Pa. 2009) (citing *Wachovia Bank, N.A. v. Ferretti*, 935 A.2d 565, 570-71 (Pa. Super. Ct. 2007). For his malpractice claim premised on negligence, Olick also points to the NASD retainer agreement to prove House had a duty to represent Olick. (Compl. ¶ 223.) Additionally, Olick claims that House was "negligent" and "violated his professional duties" by not attending NASD hearings. (*Id.* ¶ 226.) Olick makes the same injury claim in this count as he did in Count I, and for the reasons discussed above I conclude that he successfully alleged an injury based on House's violation of his professional duties. (*Id.* ¶¶ 236-239.) Thus, count III survives.

Finally, in count IV, Olick alleges that House breached his fiduciary duty. To establish a breach of fiduciary duty, plaintiff must prove "(1) that the defendant negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which he or she was employed; (2) that the plaintiff suffered injury; and (3) that the agent's failure to act solely for the plaintiff's benefit was a real factor in bringing about plaintiff's injuries." *Meyers*, 2006 WL 401855, at *16 (quoting *McDermott v. Party City Corp.*, 11 F. Supp. 2d 612, 626 n.18 (E.D. Pa. 1998)). "In other words, an attorney owes his client 'undivided loyalty,'" while,

"[n]egligence, on the other hand, consists of a breach of the duty to exercise the kind of care usually exercised by a reasonable person of ordinary prudence under like circumstances." *Id.*

In Olick's claim for breach of fiduciary duty he makes allegations that House failed to act in good faith in his conduct with Hancock and by charging unfair fees. However, the Hancock claims and the fee allegations have been dismissed based on the statute of limitations and res judicata, respectively. In count IV Olick does not allege that House's failure to represent Olick against the other NASD defendants or attend the NASD hearings after May 20, 1998, was because of a divided loyalty. Consequently, Olick fails to state a claim for breach of fiduciary duty, and the bankruptcy court's order dismissing this claim with prejudice is affirmed, albeit on other grounds.

## IV. CONCLUSION

The bankruptcy court properly concluded that Olick's claims of fraud in count II and his allegations relating to House's representation as bankruptcy counsel were barred by res judicata. However, the bankruptcy court improperly dismissed Olick's claims in counts I, III, and IV, based on House's representation during the NASD proceedings, because there had been no final determination on the merits in that matter. Nevertheless, the dismissal of Olick's Hancock claims–his allegations that House failed to properly represent Olick against Hancock–will be affirmed because they are time barred. Finally, Olick fails to state a claim for a breach of fiduciary duty (count IV) and its dismissal will also be affirmed. Thus, only the allegations based on House's failure to represent Olick against the NASD defendants–apart from the Hancock parties–contained in counts I and III survive. Accordingly, the bankruptcy court's order of June 28, 2011, will be affirmed in large part but reversed in part. An appropriate order follows.